**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 05 2007**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 04-38521 |
| | ) | |
| Randall S. Allen, | ) | Chapter 13 |
| | ) | |
| Debtor(s) | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

GMAC, LLC filed a motion for payment of administrative expenses ("Motion") [Doc. # 56] to which Debtor objected [Doc. #57]. GMAC contends that Debtor assumed a motor vehicle lease through his confirmed chapter 13 plan, and that the post-petition and post-confirmation breach of that lease should result in payment of an administrative expense claim of $12,477.19 arising from excess mileage on the vehicle. Debtor contends that GMAC refused to abide by a provision of the confirmed plan requiring Debtor to exercise the purchase option at the end of the lease term through continued direct monthly payments to GMAC and that it is now precluded from seeking additional amounts due under the lease agreement. The court held an evidentiary hearing on the motion at which Debtor was the only witness. In addition to the case docket and record, one exhibit was admitted as evidence at the hearing.

The court has jurisdiction over Debtor's chapter 13 case pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The United States District Court for the Northern District of Ohio has referred all cases

under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges in this district. General Order 84-1, United States District Court for the Northern District of Ohio. The Motion is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1), (b)(2)(B), (L), (M) and (O). As Debtor commenced his chapter 13 case on October 11, 2004, this case is governed by the Bankruptcy Code prior to the amendments effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective in pertinent part to cases commenced on and after October 17, 2005. All statutory references in this decision are to the pre-BAPCPA Bankruptcy Code.

Debtor signed on May 24, 2002, an agreement with GMAC to lease a 2002 Chevrolet Silverado. The lease term was three years, until May 23, 2005. The monthly lease payments were $360.95. The allowed mileage at the end of the lease term was 45,143, with excess miles to be charged to Debtor at fifteen cents per mile. The lease contained a purchase option at the end of the term for approximately $12,713 plus certain fees and taxes.

Debtor filed this chapter 13 case on October 11, 2004. He filed his proposed chapter 13 plan on the same day. [Doc. #2]. The plan proposed a five year term. In paragraph 4 of the plan, Debtor listed certain creditors that "shall be paid outside of the Plan. If there is an arrearage in parentheses following their names, this amount will be paid inside the Plan over a reasonable period of time...' One of the creditors listed was "G.M.A.C. ($800.00)." In paragraph 9, captioned "Special Provisions, if any," Debtor specified the following as to treatment of GMAC: "At the end of the lease term, Debtor shall exercise buyout rights to auto, and shall continue to pay the purchase price by way of direct payments." No other provisions of the proposed plan directly addressed treatment of GMAC's claim. On October 20, 2004, the Clerk mailed a copy of the plan to GMAC at the address provided in Debtor's schedules and matrix. [Doc. #10]. Also on that date the Clerk mailed notice of commencement of the case to GMAC at the address provided in Debtor's schedules and matrix. [Doc. #9]. The notice specified that the deadline for filing claims was March 14, 2005, the first meeting of creditors was set for December 14, 2004, the confirmation hearing was set for January 5, 2005, at 3:00 p.m. and the deadline for filing objections to confirmation of the plan was the date and time of the first meeting of creditors. GMAC does not contend that it did not receive proper notice of the commencement of the case, the plan and the relevant deadlines. GMAC did not object to confirmation of the plan. The court's confirmation order was entered on January 6, 2005.

The confirmation order does not include any statement about specific treatment of GMAC or any other creditor by name.

GMAC filed three proofs of claim. The first claim was dated January 4, 2005, and was docketed as Claim No. 6 on January 10, 2005. It treated the claim as unsecured in the total amount of $15,264.49. The face of the claim noted "Arrears Only Paid by Tru," which the court construes as meaning trustee. A "Lease Addendum to Proof of Claim" showed how GMAC calculated this amount, including a claimed pre-petition arrearage of $585.02 and remaining lease payments of $2,265.58. The largest component of the claim was for "Early termination liability as of petition date $14,629.67." The second claim form was docketed as Claim No. 9 on February 23, 2005, and specified that it was amending a claim previously filed on January 10, 2005. It claimed the same total amount, but specified that the arrearage was $778.74 instead of $585.02. The third claim form was docketed as Claim No. 10 on February 25, 2005, stating that it was amending a claim dated January 4, 2005. The total amount of the claim at the time the case was filed was changed slightly, to "$15,264.49 plus 7% interest." It was expressly treated as a secured claim, with the value of the collateral identified as $15,000. The addendum was the same as on Claim No. 9, although it was signed by a different person; the arrearages were stated again as $778.74. Claim No. 10 also specified "Arrears Only Paid by Trustee." This notation on the claim forms confirm that GMAC was aware of the plan and its terms. On March 4, 2005, GMAC withdrew Claim No. 9 [Doc. #36], leaving Claim No. 10 as the proof of claim in effect in this case.

GMAC also filed a motion for relief from stay on January 12, 2005, [Doc. 27] arguing that Debtor had missed two post-petition lease payments. GMAC and Debtor resolved the motion for relief from stay with an agreed order entered on February 23, 2005, specifying that Debtor would "maintain regular monthly post-petition payments to General Motors Acceptance Corporation outside the Chapter 13 Plan beginning with a payment due on February 24, 2005." The second numbered paragraph of the agreed order stated that Debtor "shall pay the arrearage amount of $778.74 inside the Plan. The debt is a secured debt and shall be paid by the Chapter 13 Trustee in the same priority as other secured claims. The Creditor shall file a Supplemental Proof of Claim." The balance of the entry addressed the remedy upon default of the agreed order.

At the hearing Debtor testified that he had over 100,000 miles on the Silverado and was aware that he was "way over the mileage on the lease." At the time he filed for bankruptcy he

3

recalled that there were 80,000 miles on the vehicle. That is why he proposed in the plan exercising the purchase option, admitting that he fully intended to make the lease payments and exercise the purchase option as provided in the plan. However, when it came time to exercise the option, Debtor did not proceed as the plan provided through direct payments to GMAC. His belief was that GMAC was required by the plan to loan him the purchase option funds. Accordingly, Debtor applied for new credit at the dealership through which he leased the vehicle and was denied a new loan for the option price. Debtor did not try to find other financing for the vehicle and turned it in to the dealership "on time" on a Tuesday evening in May 2005. When he turned it in, Debtor signed an odometer statement for the vehicle acknowledging the mileage as 122,489. [Hearing Ex. 1]. Debtor recalled getting a letter from GMAC 4 to 5 months after he turned the vehicle in and it was apparently sold, but has not been able to locate it. Debtor has since acquired another vehicle. Based on the mileage at lease end, GMAC claims an excess mileage charge of $11,601.90 on 77,346 miles over the 45,143 allowed in the lease, with sales and use tax of $812.13 calculated on that amount, for a total of $12,414.03. Debtor does not contest the calculation of this amount. However, GMAC also asserted that past due monthly payments of $587.52 were owing as well as late charges of $63.16. [Doc. #56, Ex. B]. Debtor contests these latter two amounts and testified that he was current on post-petition payments when the vehicle was turned in.

There is conflicting case law as to whether the post-petition and post-confirmation breach of a lease assumed in a chapter 13 case entitles the lessor to an administrative expense claim, although most of the cases that have examined the issue hold that it does. *Compare In re Benn*, –B.R.–, Case Nos. 06-13563, 06-13564 and 13565, 2007 WL 188362, 2007 U.S.Dist. LEXIS 5799 (E.D. Mich. January 25, 2007) (where debtors were making direct payments to lessors on leases assumed in chapter 13 cases, subsequent default did not entitle lessors to administrative expense claims) *with In re Enderle*, 352 B.R. 444 (Bankr. E.D. Mich. 2006)(motor vehicle lessor entitled to administrative expense after breach of lease assumed in chapter 13 case). In either event the predicate for awarding administrative expense status is that the lease was assumed in the chapter 13 case. GMAC's argument is premised upon Debtor having assumed the vehicle lease through his confirmed plan, to which GMAC did not object. If Debtor did not assume the motor vehicle lease, then the court need not decide whether the subsequent breach thereof entitles GMAC to an administrative expense claim. The court will decide first whether Debtor assumed the lease through

4

the plan process, as the outcome of this issue will dictate whether it is necessary to address any other issues.

In chapter 13 cases assumption and rejection of leases and executory contracts is governed by 11 U.S.C. § 1322(b)(7), providing that a plan may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Under § 365(a), court approval of assumption or rejection of any executory contract or unexpired lease is required. Section 365(b) specifies three limitations on assumption: (1) any default must be promptly cured; (2) the non-debtor party to the lease or contract must be compensated for any pecuniary loss resulting from the default; and (3) adequate assurance of future performance must be provided. Beyond requiring court approval, Section 365 does not specify how assumption or rejection must occur. However, Rule 6006 of the Federal Rules of Bankruptcy Procedure states that "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014."

The facts of this case raise the procedural question whether a separate motion under Rules 6006 and 9014 is required to obtain court approval of a lease assumption in a chapter 13 case. There was no motion regarding assumption or rejection filed in this case. Nothing in GMAC's motion for relief from stay or the agreed order could be construed as effecting assumption of the lease. A number of bankruptcy courts have examined this issue and concluded that a separate motion and resulting order are not always required to effect lease assumption in a chapter 13 case. *In re Hall*, 202 B.R. 929, 932-33 (Bankr. W.D. Tenn. 1996); *In re Flugel*, 197 Bankr. 92, 94-95 (Bankr. W.D. Tenn. 1996); *In re Aneiro*, 72 Bankr. 424, 428 n.3 (Bankr. S.D. Cal. 1987). This court finds these cases persuasive and that assumption and the requisite court approval under § 365(a) may occur through the chapter 13 plan and confirmation order.

Notwithstanding that assumption of an unexpired lease may occur through the terms of the plan and the confirmation order, the court finds that assumption of the GMAC lease was not accomplished in this case. It is generally accepted that "the doctrine of 'implied assumption' has little if any merit." *In re Dehon, Inc.*, 352 B.R. 546, 560 (Bankr. D. Mass. 2006). As a result, an executory contract can only be expressly assumed. *See In re Swallen's, Inc.*, 210 B.R. 120, 122 (Bankr. S. D. Ohio 1997); *In re O'Connor*, 258 F.3d 392, 400-01 (5th Cir. 2001)(assumption cannot be effected by boilerplate language, and chapter 11 plan provision stating that contracts not rejected

5

"will be assumed" did not result in assumption of a contract not identified as one to be assumed). Thus, Debtor's intent except as expressed by the written terms of the plan and his post-petition conduct with respect to the vehicle are irrelevant to whether the lease was assumed through the plan.

Most significantly, the words assume or assumption or any variant thereof are absent from Debtor's plan. Nor is there any reference in the plan to either § 1322(b)(7) or § 365. The only provisions of the plan specifically addressing GMAC by name are paragraphs 4 and 9. Paragraph 4 states only that the listed creditors, including GMAC, would be paid directly outside the plan and any arrearage would be paid inside the plan. The language of paragraph 4 further specifies payment of such arrearages in a "reasonable period of time" This is not the language of the assumption process, which requires defaults to be cured promptly, 11 U.S.C. § 365(b)(1)(A), instead of within a reasonable period of time as under the more general provision of § 1322(b)(5). Indeed GMAC's own proof of claim form shows that it understood its claim to be and treated it as a secured claim instead of as a true lease. Other bankruptcy courts have likewise rejected the argument that a plan provision simply continuing direct payments effects a lease assumption. *Christian v. Ford Motor Credit Co. (In re Christian)*, Case No. 99-50632 RFH, 2000 WL 33740253, *2, 2000 Bankr. LEXIS 1992, *5 (Bankr. M.D. Ga. May 8, 2000); *Mazda American Credit v. Brown (In re Brown)*, Case No. 02-66158, 2006 Bankr. LEXIS 1355 (Bankr. N.D. Ga. July 7, 2006). This court sees many objections to confirmation filed by vehicle lessors where the chapter 13 plan specifies only that payments on the lease will be made directly outside the plan. These objections are usually resolved by an agreed order clarifying and specifying treatment of the lease as either assumed or rejected.

Paragraph 9 of the plan states that Debtor "shall exercise buyout rights to auto" and then modifies the contract by specifying the manner in which it shall be done. GMAC curiously argues on the one hand that it was not bound by and was entitled to ignore this provision, even though it did not object to it, but that on the other hand this term of the plan effected assumption of the lease in spite of its modification of the buy out provision. The court need not decide whether GMAC was bound by this provision, because ultimately neither party followed it. And whether binding or not, there is still nothing in the language of paragraph 9 either in isolation or in combination with paragraph 4 that expressly assumes the GMAC lease in the court's view.

The provisions of Debtor's plan stand in contrast with the plans in *Flugel* and *Aneiro* where the courts held that assumption could occur through the Chapter 13 plan process and that a Rule

6

6006 motion was not necessary. In *Flugel*, debtors filed a form plan with a separate page attached. The paragraph on that separate page was captioned "Special Provision. Real Estate Lease Assumption." In *Aneiro*, the court noted, albeit perhaps conclusorily, that "[t]he provision in debtor's plan assuming the lease satisfied the debtor's burden on lease assumption under Chapter 13." *Cf. also Hall*, 202 B.R. at 931 (confirmation order made no mention of assumption, but the plan "made specific mention of the assumption and future rents"); *In re Wright*, 256 B.R. 858, 860 (Bankr. W.D.N.C. 2001)("Here, the debtors expressly assumed the unexpired trailer lease with FPL. The proposed plan references their intention to assume, and the Court's order of June 1, 2000 states that 'the debtors, as part of their Chapter 13 plan confirmed by this Order, have assumed the lease...'").

In summary the confirmation order in this case did not approve assumption of Debtor's lease with GMAC under § 365(a) because Debtor's plan did not expressly provide that the lease was assumed. GMAC is not entitled to an administrative expense claim in this case regardless whether assumption would have afforded GMAC an administrative expense claim, and the court will not address that issue. A separate order of the court in accordance with this memorandum of decision will be entered by the court.